IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Lakeisha J. Govan, | ) | C/A No. 3:10-3132-MBS-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Caterpillar, Inc., | ) | |
| Defendant. | ) | |

The plaintiff, Lakeisha J. Govan ("Govan"), filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., against her former employer, Caterpillar, Inc. ("Caterpillar").[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 32.) Govan filed a response in opposition (ECF No. 36) and Caterpillar replied (ECF No. 41). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Govan, to the extent they find support in the record. Caterpillar manufactures construction and mining equipment, diesel and natural gas engines, and industrial gas turbines. Govan worked for Caterpillar at its hydraulics assembly facility in Sumter, South Carolina as a machine technician or "kitter" from

---

[1] Govan's Complaint also included a state law claim for intentional infliction of emotional distress, but Govan has expressly abandoned this claim. (See Pl.'s Mem. Opp'n Mot. Summ. J. at 7 n.2, ECF No. 36 at 7.)

July of 2004 until July 27, 2009, when she was laid off in connection with a reduction in force due to a downturn in the national economy. Govan was informed that she was being laid off when she returned from her third maternity leave during her tenure at Caterpillar. While Govan was with child in 2005, 2007, and 2008, co-workers and supervisors at Caterpillar had commented on Govan's frequent pregnancies and teased her. Some examples of these comments included announcing that Govan was "again" pregnant and that "it will continue to be that way until she figured out that it was not coming from the water"; stating that the only thing Govan knew how to do was to have babies; instructing Govan to stop walking around because visitors in the plant did not want to see her big stomach; stating that if Govan kept it up, she would have as many children as Mr. Johnson's mother, who had seventeen children; and asking Govan whether she was going to get her tubes tied. (Govan Dep. 34:7-12, 53:10-12, 40:14-41:6, 42:2-19, 53:19-54:2; ECF Nos. 32-2 at 14, 32-3 at 8, 32-2 at 20-21, 32-2 at 22, 32-3 at 8-9.)

Following her termination, Govan filed an administrative charge with the South Carolina Human Affairs Commission ("SHAC"), the deferral agency in South Carolina for the federal Equal Employment Opportunity Commission ("EEOC"), asserting that she had suffered discrimination due to her gender and pregnancy based on her termination on July 27, 2009.[2] Having received a right-to-sue letter, Govan commenced this action, asserting discrimination based upon her gender/pregnancy as well as a claim based on a hostile work environment.

---

[2] The Pregnancy Discrimination Act extended the proscriptions of Title VII against gender discrimination to pregnancy. See 42 U.S.C. § 2000e(k). Govan expressly bases her Title VII claims on her pregnancies. (Govan Dep. 22:21-23:14, ECF No. 32-2 at 2-3.)

# DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there

PJG

will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.      Exhaustion of Administrative Remedies**

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); see also 42 U.S.C. § 2000e-5(f)(1). Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (stating that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"); Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (stating that "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite"); see also 42 U.S.C. § 2000e-5(f).

In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge'") (quoting Equal Employment Opportunity Comm'n v.

Gen. Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976)); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

> The Fourth Circuit has emphasized:
>
> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation.
> First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning.
> Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation marks and citations omitted). Therefore, a discrimination suit "is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original

*PJG*

charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994) (Title VII).  When a discrimination claim "exceed[s] the scope of the EEOC charge and any charge that would naturally have arisen from an investigation thereof," it is procedurally barred.  Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (Title VII).

Courts have found that a charge asserting a claim of gender or pregnancy discrimination based on a termination alleged to have occurred on one day is insufficient to provide notice of a claim of hostile work environment or sexual harassment.  See Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 752-53 (E.D. Va. 1991); see also Evans, 80 F.3d at 963, 964 (stating that an administrative charge of failure to promote based on the plaintiff's sex did not encompass allegations of sexual harassment); Logan v. Colonial Williamsburg Hotel Props., Inc., 941 F. Supp. 60, 62 (E.D. Va. 1996) (holding that an EEOC charge alleging race, sex, and retaliation discrimination was insufficient to give notice of a sexual harassment claim); Belton v. Chester Lancaster Disabilities & Special Needs Bd., Inc., No. 0:05-cv-01649-MBS, 2007 WL 528064, at *3 (D.S.C. Feb. 14, 2007) (finding a harassment claim barred where the charge only related to a discrete act of race discrimination).  Govan's hostile work environment claim is not reasonably related to the allegations in her EEOC charge of discriminatory discharge and is, therefore, beyond the scope of her charge and any reasonable investigation that would follow.  Accordingly, the only properly exhausted claim before the court is Govan's claim that she was discharged in violation of Title VII on July 27, 2009.

**C.    Discrimination Claim**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof.  First, she may establish through direct or circumstantial proof that a protected characteristic such as gender was a motivating factor in the employer's adverse decision.  See Hill

PJG

v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt,

PJG

601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

Govan offers both avenues of proof in her opposition to summary judgment. First, she argues that she has direct evidence of discrimination, claiming that the statements, comments, and teasing

regarding her successive pregnancies constitute direct proof of discriminatory animus. See Worden, 549 F.3d at 342 n.7; Diamond, 416 F.3d at 318. In support of this theory, Govan argues that the discriminatory comments regarding her pregnancies were made by some of the individuals who participated in identifying two kitters for layoff. These individuals include David Johnson, Edward Johns, and Timothy Faulling.[3] In turn, Caterpillar argues that although these individuals were consulted and had input into the reduction-in-force decisions, they were not the ultimate decision makers who made the layoff selections; rather, Caterpillar asserts that those decisions were made by Operations Manager Ryan Howard, against whom Govan has no evidence of discriminatory motive.

Contrary to Govan's argument, no material factual dispute exists on this point that would preclude summary judgment on Govan's pregnancy discrimination claim. Even accepting as true Govan's assertion that some of the individuals who had input into the layoff decision made disparaging remarks about her pregnancies, her claim fails as a matter of law.[4]

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42

---

[3] Govan does not dispute Caterpillar's evidence that Ryan Howard, the Operations Manager, made no derogatory statements about Govan's pregnancies.

[4] Although Govan appears to argue in her brief that Johnson, Johns, and Faulling were responsible for the decision at issue, the evidence she relies on shows that she does not dispute that Howard made the decision at issue and that Johnson, Johns, and Faulling were subordinate to Howard; rather, she essentially appears to be advancing a "cat's paw" theory that Howard blindly accepted the recommendation of his biased subordinates. See Staub v. Proctor Hosp., 131 S. Ct. 1186 (2011) (discussing "cat's paw" liability under the Uniformed Services Employment and Reemployment Rights Act (USERRA)); Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) (Posner, J.) (ADEA).

PJG

U.S.C. § 2000e(k). Under Title VII an employer is defined as "a person engaged in an industry affecting commerce . . . and any agent of such a person." 42 U.S.C. § 2000e(b).

The Fourth Circuit takes a strict view regarding the determination as to who can be considered an agent of an employer for Title VII liability purposes. See, e.g., Ricci v. DeStefano, 557 U.S. 557, 606-07 (2009) (Alito, J., concurring) (discussing various circuits' approaches to the question of when an employer may be held liable based on the discriminatory intent of subordinate employees who influence but do not make the ultimate employment decision and noting that the Fourth Circuit has the "least employee-friendly standard"); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 291 (4th Cir. 2004) (*en banc*) (discussing the determination of who is a decision maker for purposes of liability under discrimination statutes). In Hill, the Fourth Circuit, in an *en banc* decision, analyzed a similar issue to that presented here. In defining the parameters of when an employer may be held liable for the discriminatory animus demonstrated by an employee who is *subordinate* to the ultimate decision maker, the Hill Court found that Title VII does not limit the discrimination inquiry to the actions or statements of "formal decisionmakers" for the employer. Id. at 290. Such an approach, the Hill Court noted, would allow an employer to insulate itself from liability "simply by hiding behind the blind approvals, albeit non-biased, of formal decisionmakers." Id. at 290; see also Staub, 131 S. Ct. at 1192-93. Nonetheless, "a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision" does not become a decision maker "simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." Id. at 291. Similarly, the United States Supreme Court has held in the employment context that for an employer to be held liable for the discriminatory animus of a prejudiced

supervisor who does not exercise ultimate decision making authority but intends to cause an adverse employment action, that supervisor's discriminatory act must be the proximate cause of the ultimate employment action. See Staub, 131 S. Ct. at 1194.

The Fourth Circuit has recognized that in some circumstances an employer can be held liable for unlawful discrimination when the discriminatory animus of others can be attributed to the formal decision maker or the employer generally. See Baqir v. Principi, 434 F.3d 733, 744-45 (4th Cir. 2006) (attributing discriminatory remarks of physician board members to the medical director who made the decision to fire); Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010) (finding that the evidence presented on summary judgment could support a finding of a discriminatory "corporate culture"). Indeed, the Merritt Court acknowledged that courts should be cautious about attributing to the ultimate decision maker the unfortunate expressions and beliefs of those around him and those who work in his employ, but nonetheless found that when there is a "clear nexus" between the discriminatory remarks of others and the adverse employment action, the decision maker's choice is placed in a "less neutral context." Id. at 300-01; see also Lettieri v. Equant, Inc., 478 F.3d 640, 649 (4th Cir. 2007) (finding that the plaintiff had introduced evidence demonstrating a discriminatory attitude at the workplace and illustrating a nexus between that negative attitude and the employment action). Such a situation is distinguished from "stray or isolated remarks" unconnected to the decision maker. Compare Merritt, 601 F.3d at 300 with Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated, and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of

PJG

discrimination.") (internal quotation marks and alterations omitted), <u>overruled on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003).

Here, the record contains insufficient evidence from which a reasonable jury could find that any remarks by Johnson, Johns, or Faulling regarding Govan's pregnancies were causally connected to the reduction-in-force decision. The unrefuted evidence shows that Govan's pregnancies were never mentioned in any of the discussions pertaining to the reduction in force. <u>Cf.</u> <u>Bakir</u>, 434 F.3d at 744-45 (finding that discriminatory remarks of board members made at the meeting where the employment decision was discussed could be attributed to the medical director who made the ultimate decision). Govan simply has not presented evidence of any "clear nexus" between the discriminatory remarks of others and the adverse employment action such as the courts found in <u>Merritt</u>, <u>Lettieri</u>, and <u>Baqir</u>. Rather, she relies on remarks unconnected to the ultimate decision maker—or even the decision making process—which are insufficient as a matter of law. This conclusion is buttressed by unrefuted evidence in the record that Howard personally observed deficiencies in Govan's work ethic.

Nor can Govan succeed under the <u>McDonnell Douglas</u> proof framework. To establish a *prima facie* case of Title VII discriminatory discharge in the context of a reduction in force, a plaintiff must show that: (1) she was a member of a class protected under Title VII; (2) she was selected from a larger group of candidates; (3) she was performing at a level substantially equivalent to the lowest level of that in the group retained; and (4) the selection process produced a residual workforce that contained some unprotected persons who were performing at a lower level than that

Page 12 of 16

PJG

at which the plaintiff was performing.[5] Corti v. Storage Tech. Corp., 304 F.3d 336, 341 n.6 (4th Cir. 2002). Only the third and fourth elements are at issue in this case. Because the evidence regarding these elements overlaps with that used by Caterpillar in support of its proffered legitimate, nondiscriminatory reason for selecting Govan to be laid off, the court addresses these issues together. See Warch, 435 F.3d at 516 (noting the flexibility of the McDonnell-Douglas framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's performance] at different stages of the McDonnell Douglas framework").

When considering an employee's qualifications and job performance, it is the perception of the decision maker, not the unsupported opinion of the plaintiff, that is relevant. See Evans v. Technologies Applications & Svc. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (internal quotation marks and citations omitted); see also DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.") (internal quotation marks and citations omitted). Of the four kitters employed at the relevant time, two were retained and two selected for layoff. The unrefuted evidence shows that the two who were retained, Cassandra Chambers and Nitrella Thames, had only positive scores on their latest performance evaluations. In fact, Chambers had recently been promoted to Team Leader, but was returned to a non-leadership position due to the cutbacks. Similarly, Thames's evaluation contains only positive comments. Even though she received the same average numerical score on her evaluation as

---

[5] In other factual contexts, some courts have characterized the fourth element as requiring a showing that the employer did not treat the protected characteristic neutrally in making its reduction-in-force decisions. See, e.g., Herold v. Hajoca Corp., 864 F.2d 317, 320 (4th Cir. 1988) (ADEA).

Govan,[6] Thames did not receive any "Needs Improvement" ratings on her evaluation. By contrast, Govan's evaluations noted that she needed improvement in many areas. For example, in January 2005, Govan's evaluation noted that she "[o]ften needs coaxing to start or complete tasks"; in July 2005, it was noted that Govan "appears to have lost interest and has difficulty remaining focused"; and in November 2008, Govan was evaluated as "easily distracted" and needing improvement in the areas of teamwork, productivity, and initiative. (ECF Nos. 32-12 at 16-17, 32-5 at 20-21, and 32-5 at 22-23.) Notably, these criticisms appeared in Govan's evaluations even before her pregnancies. (Govan Dep. 34:25-35:3, ECF No. 32-2 at 14-15.) Furthermore, Howard observed that Govan's work performance was substantially worse than Thames's, and every supervisor who was consulted identified problems with Govan's work ethic and motivation. On this record, no reasonable jury could find that Govan was performing at a level substantially equivalent to Thames. Further, no reasonable jury could find that Caterpillar's reasons for laying off Govan were pretextual and that she was the victim of unlawful discrimination based upon her pregnancies. See Merritt, 601 F.3d at 294-95.

---

[6] The court observes that while the equivalent score to Thames is viewed in the light most favorable to Govan, Thames was reviewed by a different supervisor than Govan.

## RECOMMENDATION

For the foregoing reasons, Caterpillar is entitled to summary judgment on all of Govan's remaining claims. The court therefore recommends that Caterpillar's motion (ECF No. 32) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 13, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).