IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Lakeisha J. Govan, ) | Civil Action No. 3:10-03132-MBS |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Caterpillar, Inc. ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Lakeisha J. Govan ("Plaintiff") filed this action against her former employer, Caterpillar, Inc. ("Defendant"), alleging that she was subjected to discrimination and a hostile work environment because of her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k). (ECF No. 1.) Plaintiff also asserts a state law claim for intentional infliction of emotional distress. (Id.) This matter is before the court on a motion for summary judgment pursuant to Fed. R. Civ. P. 56 by Defendant, which motion was filed on January 10, 2012. (ECF No. 32.) Plaintiff opposes Defendant's motion, asserting that Defendant has failed to show that it is entitled to judgment as a matter of law on her claims. (ECF No. 36.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On August 13, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's motion on all Plaintiff's claims. (ECF No. 45.) Plaintiff filed objections to the Report and Recommendation asking the court to decline accepting the

1

Magistrate Judge's recommendation. (ECF No. 46.) For the reasons set forth below, the court adopts, in part, the Report and Recommendation of the Magistrate Judge and **GRANTS** Defendant's Fed. R. Civ. P. 56 motion for summary judgment as to Plaintiff's claims for hostile work environment and intentional infliction of emotional distress. The court **DENIES** Defendant's motion for summary judgment as to Plaintiff's claim for sex and pregnancy discrimination.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed in the Report and Recommendation. The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate. The court adopts this summary as its own, and will only reference facts pertinent to the analysis of Plaintiff's claims.

Defendant is the world's largest manufacturer of construction and mining equipment, diesel and natural gas engines, and industrial gas turbines. (ECF No. 32-14, p. 1.) Defendant operates a hydraulic parts assembly plant in Sumter, South Carolina (the "Sumter facility"). (ECF No. 32-2, pp. 8-9.) In July 2004, Defendant hired Plaintiff to work at the Sumter facility. (ECF No. 32-2, p. 13.) Plaintiff mainly worked for Defendant as a "kitter," which position required Plaintiff to act as a runner and sorter, perform preliminary assembly, and supply parts for piston heads and rods to rod builders.[1] (ECF No. 32-2, pp. 8-10.) Plaintiff usually worked second shift at the Sumter facility, where she was primarily supervised by David Johnson ("Johnson"). (ECF No. 32-3, pp. 9-10.)

---

[1] According to Plaintiff, rod builders finish assembling the piston heads and rods, and then give these completed components to "Group Build" who put the parts in hydraulic cylinders. (ECF No. 32-2, pp. 8-10.)

During her employment with Defendant, Plaintiff became pregnant on three separate occasions, which maternity resulted in childbirth on July 19, 2006, October 23, 2007, and May 28, 2009. (Id. at pp. 13-14.) On December 28, 2005, during Plaintiff's first pregnancy, Plaintiff's physician stated that Plaintiff "needs to be able to sit down when needed due to abdominal pain and left leg pain with pregnancy." (ECF No. 32-14, p. 5.) In an attempt to reasonably accommodate Plaintiff in accordance with her doctor's instructions, Defendant transferred Plaintiff to a first shift job in the shipping and receiving area (the "Logistics Department") and placed her under the supervision of Tim Faulling ("Faulling"). (Id. at pp. 15-16.) After delivering her first baby on July 19, 2006, Plaintiff returned to her duties as a kitter on September 11, 2006. (ECF No. 32-14, p. 9.)

During Plaintiff's second pregnancy, Defendant again moved Plaintiff to the Logistics Department on the first shift. (ECF No. 32-2, p. 17.) On the first day that Plaintiff rejoined the Logistics Department, Ed Johns ("Johns"), the first shift supervisor, met with employees in the department to notify them that Plaintiff would be joining the group. (ECF No. 32-11, pp. 7-8.) Johns told the individuals at this meeting that Plaintiff was pregnant again and "it will continue to be that way until she figured out that it was not coming from the water." (ECF No. 36-1, p. 12.) In response to Johns' statement, a co-worker approached Johns and said that another employee in the Logistics Department had found his comments offensive. (ECF No. 32-11, pp. 9-10.)

After delivering her second baby on October 23, 2007, Plaintiff returned to work as a kitter under Johnson on December 19, 2007. (ECF Nos. 32-3, pp. 9-10; 32-14, p. 16.) In late 2008, Plaintiff learned that she was pregnant again. (ECF No. 32-3, p. 12.) Thereafter, Plaintiff had a conversation with Virginia Dority ("Dority"), the supervisor of the Human Resources

Department at the Sumter facility, who suggested that Plaintiff see the Sumter facility's in-house nurse, Lisa Osborne ("Osborne"). (ECF No. 32-2, pp. 5-6.) During her conversation with Plaintiff, Osborne learned that Plaintiff did not want to have any more children. (Id. at p. 18.) In response to this information, Osborne said that she could help Plaintiff get rid of the child without her husband finding out about it. (Id.) Osborne further implied that Plaintiff could lose her job due to her pregnancy because Defendant did not like employees missing work. (Id. at pp. 18-19.)

As news of Plaintiff's pregnancy spread to her co-workers, Johnson began to make comments to Plaintiff about her repeated pregnancies. Johnson stated on one occasion that all Plaintiff knew how to do was have babies. (ECF No. 32-3, p. 8.) Johnson further stated to Plaintiff that her stomach was big and she should stay on the plant floor so visitors to the Sumter facility could not see her. (ECF No. 32-2, p. 20.) Johnson also told Plaintiff that his mother had seventeen kids and if Plaintiff kept it up, she would catch up with his mom. (Id. at p. 22.) Finally, Johnson stated to Plaintiff on a few occasions that she wobbled when she walked and he repeatedly called Plaintiff "Prego." (ECF Nos. 32-2, p. 25; 32-3, p. 1.)

Following Johnson's example, other co-workers commented to Plaintiff about her pregnancy. Lisa Mims and Herb McCatherer called Plaintiff "Fertile Myrtle" on several occasions. (ECF No. 36-1, pp. 25-26.) McCatherer also stated on one occasion that all Plaintiff knew how to do was have babies. (Id. at p. 28.) David Garcia, another co-worker of Plaintiff, commented to Plaintiff on two or three occasions that her baby was "not my baby." (Id. at p. 27.) Finally, Faulling asked Plaintiff on a daily basis whether she was going to have her tubes tied. (ECF No. 32-3, pp. 8-9.)

In January 2009, Plaintiff was selected for a position on a new production line at the

4

Sumter facility that made smaller hydraulic parts. (ECF No. 32-3, pp. 9-10.) The new position was on first shift and Plaintiff again was supervised by Faulling. (Id.) However, on March 31, 2009, Plaintiff had to begin her maternity leave due to complications with her pregnancy. (ECF Nos. 32-2, pp. 4-7; 32-14, p. 18.)

Also in 2009, the demand for hydraulic cylinders decreased significantly resulting in lower production requirements at the Sumter facility. (ECF No. 32-10, pp. 8, 10.) Defendant determined that it needed to lay-off some portion of its full-time workforce. (Id.) Ryan Howard ("Howard"), the operations manager at the Sumter facility, had the responsibility of determining the size of the workforce needed at the Sumter facility, which duty required him to communicate with the supervisors to determine candidates for lay-off. (Id. at pp. 10-11.)

In the context of kitters, there were four kitters - Cassandra Chambers, Nitrella Thames, Wanda Green, and Plaintiff - working at the Sumter facility, and Howard determined that only two were needed based upon the reduced demand. (ECF Nos. 32-8, pp. 12-14; 32-10, p. 12.) Howard met with Johns, Johnson, and Faulling to discuss who of the kitters would be retained and who would be laid off. (ECF No. 32-10, p. 11.) Howard, Johns, Johnson, and Faulling agreed that Plaintiff was a weaker performer, lacked the necessary work ethic, and should be laid off. (ECF Nos. 32-15, pp. 2-3; 36-3, pp. 6-7, 11.) In contrast, Chambers was retained as a kitter because she had received an overall rating of "Outstanding" in her final performance review before the lay-off selection. (ECF No. 32-15, pp. 6-7.) Thames was retained over Plaintiff even though they had the same performance review score, because Thames did not have any scores of "Improvement Needed" unlike Plaintiff, and Howard, Johns, Johnson, and Faulling considered Thames to be a strong employee whose motivation, initiative, and willingness to help were considered great assets at the Sumter facility. (ECF Nos. 32-15, pp. 3, 9-10; 36-5, pp. 3-4.)

After delivering her third baby on May 28, 2009, Plaintiff was cleared to return to work on July 23, 2009. (ECF No. 32-14, p. 20.) On July 27, 2009, Plaintiff met with Dority, who informed Plaintiff that she was being laid off. (ECF No. 32-3, p. 23.)

On August 7, 2009, Plaintiff filed a charge of race, sex, and pregnancy discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she was laid off "after returning from maternity leave" and "the majority of the employees chosen for lay-off are Black." (ECF No. 36-8, p. 1.) After receiving notice of the right to sue, Plaintiff commenced this action on December 9, 2010. (See ECF No. 1, p. 2.) Defendant answered Plaintiff's complaint on January 31, 2011. (ECF No. 9.) On January 10, 2012, Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56 as to Plaintiff's claims. (ECF No. 32.) Plaintiff filed opposition to Defendant's motion on February 14, 2012, to which Defendant filed a reply in support of the motion on March 2, 2012. (ECF Nos. 36, 41.)

## II. LEGAL STANDARD AND ANALYSIS

### A. Standard

#### 1. Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198,

200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

    2.    Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not

based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

        3.        Claim of Discrimination under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a claim of discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Where there is direct evidence of discrimination, the McDonnell Douglas burden-shifting framework does not apply. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).

To establish a prima facie case of discrimination under Title VII in a reduction-in-force ("RIF") context, a plaintiff must show that: (1) she was protected under Title VII; (2) she was selected from a larger group of candidates; (3) she was performing her job duties at a level substantially equivalent to the lowest level of that in the group retained; and (4) the process of selection produced a residual workforce that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. Corti v. Storage Tech. Corp., 304 F.3d 336, 340 n. 6 (4th Cir. 2002). Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant

meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

    4.     Claim of Hostile Work Environment under Title VII

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of her sex. 42 U.S.C. § 2000e-2(a)(1). To state a prima facie case of a hostile work environment based on sex, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir. 2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, she would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003). First, a plaintiff must show that she "subjectively perceive[d] the environment to be abusive." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993).

Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Title VII is not a "general civility code." Oncale, 523 U.S. at 80. Further, when analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

     5.     Claim of Discrimination under the PDA

The PDA amended Title VII. In pertinent part, the PDA states as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise.

The PDA makes it clear that Title VII encompasses pregnancy-based discrimination. Barnes v. Hewlett–Packard Co., 846 F. Supp. 442, 443 (D.Md. 1994) ("Title VII, as amended by the Pregnancy Discrimination Act of 1978 (PDA), makes it illegal to discriminate 'against any

individual with respect to . . . conditions of . . . employment . . . because of or on the basis of pregnancy, child birth, or related medical conditions.'") (quoting 42 U.S.C. § 2000e(k)). A pregnancy discrimination claim is analyzed in the same fashion as any other sex discrimination claim brought pursuant to Title VII. DeJarnette v. Corning, Inc., 133 F.3d 293, 297 (4th Cir. 1998) ("A claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII.").

### 6. Exhaustion of Administrative Remedies

In order to bring a lawsuit in the United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state," within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e).

### B. Analysis

#### 1. Plaintiff's Claim of Discrimination

Plaintiff alleges sex and pregnancy discrimination as a result of Defendant's decision to lay her off on July 27, 2009. Plaintiff attempts to establish her claims with both direct evidence of the alleged discrimination and by using the McDonnell Douglas indirect, burden-shifting method. In terms of direct evidence of discrimination, Plaintiff asserts that discriminatory comments regarding her pregnancies were made by Johnson, Johns, and Faulling, who were responsible for selecting her for layoff. (ECF No. 36, pp. 16-17.) Plaintiff further asserts that

her evidence establishes a prima facie case of discriminatory discharge in the context of a RIF and a reasonable jury could conclude that Defendant's stated reason for her lay-off was merely a pretext for discrimination. (Id. at pp. 21-24.)

Upon her review of Plaintiff's direct evidence, the Magistrate Judge concluded that there were insufficient facts in the record for a reasonable jury to find that any remarks by Johnson, Johns, or Faulling regarding Plaintiff's pregnancies were causally connected to the RIF decision. (ECF No. 45, p. 12.) The Magistrate Judge stated that there was not any evidence showing that Plaintiff's pregnancies were ever mentioned in any of the discussions pertaining to the RIF. (Id. (cf. Baqir v. Principi, 434 F.3d 733, 744-45 (4th Cir. 2006) (finding that discriminatory remarks of board members made at the meeting where the employment decision was discussed could be attributed to the medical director who made the ultimate decision))) The Magistrate Judge found that Plaintiff did not present sufficient evidence of any clear nexus between the discriminatory remarks of others and the adverse employment action she suffered. (Id. at p. 12.) As a result, the Magistrate Judge determined that Plaintiff's direct evidence case fails because it relied on remarks unconnected to the ultimate decision maker - or even the decision making process - which are insufficient as a matter of law. (Id.)

In the context of her McDonnell Douglas analysis, the Magistrate Judge found that Plaintiff failed to establish a prima facie case of discrimination because she could not show that she was performing her job duties at a level substantially equivalent to Cassandra Chambers and Nitrella Thames, the kitters retained by Defendant. (ECF No. 45, pp. 13-14.) Moreover, even if Plaintiff could establish a prima facie case of discrimination in the RIF context, the Magistrate Judge concluded that a reasonable jury would not find that Defendant's reasons for laying off Plaintiff were pretextual and that she was the victim of unlawful discrimination based upon her

pregnancies.  (Id. at p. 14 (citing Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294-95 (4th Cir. 2010)).)  Therefore, the Magistrate Judge recommended granting Defendant's motion for summary judgment on Plaintiff's sex and pregnancy discrimination claims related to her lay-off.  (Id. at p. 15.)

In her objections to the Magistrate Judge's recommendation, Plaintiff asserts that her direct evidence of discrimination could result in a reasonable jury finding that "the remarks of Mr. Johnson, Mr. Johns or Mr. Faulling were casually connected to the Plaintiff's termination." (ECF No. 46, p. 3.)  In support of this assertion, Plaintiff argues that the decision to lay her off was made by Johnson, Johns, Faulling, and these individuals were responsible for the discriminatory animus exhibited towards her.  (Id. at p. 4.)  Plaintiff further argues that a reasonable jury could conclude that the discriminatory animus exhibited by Johnson, Johns, and Faulling towards Plaintiff directly and proximately resulted in her termination from employment with Defendant.  (Id. at p. 5.)

Also, in her objections to the Magistrate Judge's recommendation, Plaintiff asserts that a reasonable jury could find that she was performing at a level substantially equivalent to Thames. (ECF No. 46, p. 6.)  Plaintiff further asserts that the Magistrate Judge erroneously concluded that a reasonable jury could not find that Defendant's reasons for terminating Plaintiff were pretextual.  (Id. at p. 8.)  In this regard, Plaintiff asserts pretext is established by (1) Howard's claims that he made the decision to terminate Plaintiff when Johnson's testimony shows that he, Johns, Howard, and Faulling made the decision to lay-off Plaintiff; (2) the close temporal proximity between Plaintiff's return from maternity leave and her termination; and (3) none of Plaintiff's performance evaluations ever indicated that she was not performing at a level which met Defendant's expectations.  (Id. at pp. 8-10.)  As a result of this evidence of pretext, Plaintiff

13

urges the court to reject the Magistrate Judge's recommendation and deny Defendant's motion for summary judgment.

The court disagrees with the Magistrate Judge's finding that direct evidence does not exist to support a finding that Plaintiff's lay-off on July 27, 2009 was motivated by her sex or pregnancy. Plaintiff's evidence that Johnson, Johns, and Faulling selected her for lay-off after previously making discriminatory comments about her pregnancies raises a genuine issue of material fact as to whether Plaintiff's sex and/or pregnancy actually played a role in the decision-making process and had a determinative influence on the outcome. See Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995) ("What is required . . . is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."). In this regard, a reasonable jury could return a verdict for Plaintiff after finding that Johnson, Johns, and Faulling maintained a discriminatory attitude towards pregnant women and that discriminatory attitude impacted the ultimate decision to lay-off Plaintiff during the RIF.

To obscure the role of Johnson, Johns, and Faulling in Plaintiff's lay-off, Defendant claims that the ultimate decision regarding Plaintiff's employment was made by Howard. (ECF No. 32-1, p. 29 (citing ECF No. 32-15, p. 2).) However, Defendant's assertion is contradicted by testimonial evidence from Johnson that he, Johns, Faulling, and Howard all made the ultimate decision to lay-off Plaintiff. (ECF No. 36-3, p. 6.) "The focus of . . . [the] inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Anderson v. Ziehm Imaging, Inc., C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000)). Therefore, the court finds that Plaintiff has presented sufficient evidence which, accepted as true for the

purposes of Defendant's motion, establishes that the discriminatory perception of her as a pregnant woman maintained by Johnson, Johns, and Faulling directly contributed to the adverse employment action that Plaintiff suffered.

The court also disagrees with the Magistrate Judge's finding that, assuming Plaintiff can establish a prima facie case of discrimination in the context of a RIF, Plaintiff has not produced sufficient evidence to meet her burden of proving that the reasons asserted for the RIF were a pretext for sex and/or pregnancy discrimination. As outlined above, Plaintiff has provided sufficient evidence that a reasonable jury could find that sex and/or pregnancy discrimination was the real reason for her lay-off instead of the reasons cited by Defendant. Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) ("The ultimate question is whether the employer intentionally discriminated . . . .") (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)) (internal citations omitted). Accordingly, the court must deny Defendant's motion for summary judgment on Plaintiff's claim for sex and pregnancy discrimination.

  2. <u>Plaintiff's Claim of Hostile Work Environment</u>

As part of her Title VII and PDA claims, Plaintiff alleges that Defendant intentionally, maliciously, and recklessly created and/or allowed to occur "a work environment that was hostile towards pregnant/female employees." (ECF No. 1, p. 2.) Defendant argues that Plaintiff's claim for hostile work environment is subject to dismissal for failure to exhaust administrative remedies. (ECF No. 32-1, p. 20.)

Upon her review, the Magistrate Judge found that Plaintiff's hostile work environment claim was not reasonably related to the allegations in her EEOC charge of discriminatory discharge and, therefore, was beyond the scope of her charge and any reasonable investigation that would follow. (ECF No. 45, p. 6.) As a result, the Magistrate Judge concluded that the only

15

properly exhausted claim before the court was Plaintiff's claim that she was discharged on July 27, 2009 in violation of Title VII.  (Id.)   Accordingly, the Magistrate Judge recommended granting Defendant's motion for summary judgment because Plaintiff failed to administratively exhaust her hostile work environment claim.

In her objections to the Magistrate Judge's recommendation, Plaintiff asserts that the Magistrate Judge erred in concluding that  Plaintiff's claim of hostile work environment should be dismissed because it was outside the scope of her administrative charge of discrimination. (ECF No. 46, p. 1.)  Plaintiff argues that her hostile work environment claim has been exhausted because it is reasonably related to the discrimination claim set forth in her administrative charge, and because a reasonable investigation of her administrative charge would have covered this claim.  (Id. at p. 3.)

After careful review of the record, the court agrees with the Magistrate Judge that Plaintiff's claim for hostile work environment is procedurally barred from consideration by this court.  It is undisputed that Plaintiff filed an administrative charge asserting the following:

> I worked for the above employer from July 2004, as a Technician until I was laid off July 27, 2009.  During my employment my performance was above average and I had no disciplines or warnings.
>
> July 27, 2009, after returning from maternity leave I was informed I was laid-off.  No reason was given for my selection.  I am aware the majority of the employees chosen for lay-off are Black.
>
> I believe I have been discriminated against because of my sex, female, pregnancy and my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended.

 (ECF No. 32-5, p. 1.)

A plain reading of Plaintiff's administrative charge confirms that she did not include any allegations about harassment or a hostile work environment created by Defendant prior to filing

16

her lawsuit in this court. (Id.) Factual allegations made in formal litigation must correspond to those set forth in the administrative charge. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). A plaintiff's claim will be barred "if the administrative charge alleges one type of discrimination - such as discriminatory failure to promote - and the claim encompasses another type - such as discrimination in pay and benefits." Id. Here, Plaintiff specifically alleged in her charge a discrete act of racial, sex, and/or pregnancy discrimination in the context of her lay-off on July 27, 2009. Additionally, Plaintiff's specification of July 27, 2009 as both the earliest and latest date of occurrence of the discrimination substantiates that Plaintiff did not allege a claim of hostile work environment. See id. at 511 (finding a Plaintiff's harassment allegations barred as the acts alleged did not fall within time span listed on EEOC charge). In this regard, a reasonable investigation would not have uncovered the harassment allegation that Plaintiff now sets forth in formal litigation. Id. at 512. Therefore, because Plaintiff has failed to administratively exhaust her claim for hostile work environment, Defendant is entitled to summary judgment.

        3.      Plaintiff's Claim of Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant intentionally and recklessly inflicted upon her severe emotional distress. (ECF No. 1, p. 4.) In response to Defendant's motion for summary judgment, Plaintiff stated that she "is no longer pursuing a claim for intentional infliction of emotional distress against the Defendant." (See ECF No. 36, p. 7 n. 2.) Accordingly, Defendant is entitled to summary judgment on this claim.

### III.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's claims for hostile work environment

and intentional infliction of emotional distress. (ECF No. 32.) The court **DENIES** Defendant's motion for summary judgment as to Plaintiff's claim for sex and pregnancy discrimination. (Id.) The court adopts, in part, the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. The Clerk of Court is directed to place the within action on the November 2012 trial roster.

    **IT IS SO ORDERED**.

                                                /s/Margaret B. Seymour
                                                MARGARET B. SEYMOUR
                                                CHIEF UNITED STATES DISTRICT JUDGE

September 26, 2012
Columbia, South Carolina